# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-00692-DDD

NICHOLAS NIELSEN,

   **Plaintiff**

   **Vs.**

Verano Holdings, LLC, Sam Dorf, George Archos, Darren Weiss, James Leventis, Chris Fotopoulos, Edward Shen, Michael Frontier, Rockview Capital, JJR Private Capital, Alan Bluestine, Sol Global Investments, Serruya Private Equity, Severn Bank, Randy Taylor Consulting, Partner Colorado Credit Union, Steve White, Jason Vedadi, Nicole Stanton, Ben Kimbro, Elroy Sailor, Ana Dutra, Mark Barnard, and Eula Adams, Daniel Reiner, Canaccord Genuity, Alliance Global Partners, Natural State Wellness Enterprises, LLC, John Allison, Henry Wilkins V, Dr. William Young, Bill Carwell, Christine L. Edmonson, Amy Haun Hall, Bob Dale Haun, Leo Hauser, Ryan W Heringer, David Johnson, Robert Lee Jones III, Bobbi McDaniel, Dustin McDaniel, Bobby McDaniel, Kristy McDaniel, Marvin Parks, Jeffery J. Ryan, Dr. Marvin Bruce Sanderson, Dr. Ladd Scriber, Dr. Thomas M Stank, Bill Stanley, Bart Calhoun, Melissa Moody, Martha Rouby, Warren Ross, and The Ross Group,

   **Defendants**

---

## FIRST AMENDED COMPLAINT AND JURY DEMAND

---

1



## INTRODUCTION

1. It is a bedrock principle of the United States Constitution that federal law is the
supreme law of the land. State laws that are flatly inconsistent with
constitutionally authorized federal law have no force or effect. On the issue of
medical marijuana, federal law is clear: it is a felony under the Controlled
Substances Act of 1970 ("CSA") to deal in marijuana.  Despite the express federal
prohibition on marijuana, Arkansas and many of its local jurisdictions have
enacted laws, ordinances, and regulations designed to promote the growth of a
billion-dollar commercial marijuana industry. Yet notwithstanding that medical
marijuana is now "legal" in Arkansas, the drug's cultivation, sale, and possession
remain serious federal offenses in Arkansas, just as they are everywhere else in
the United States. Indeed, those associated with Arkansas' largest-scale
marijuana producers risk being sent to federal prison for the rest of their lives.

2

The people of Arkansas are free to advocate for a change in this federal criminal prohibition, but they must do so through their elected representatives in Congress. Under our federal system, Congress alone can authorize revision of federal laws prohibiting the commercial trade in medical marijuana.

2. Of course, in recent years the United States Department of Justice has largely declined to bring prosecutions under the federal marijuana laws, prompting hundreds of millions of investment dollars and thousands of new customers to flow into Colorado's commercial marijuana industry. But the Justice Department's current policy of non-enforcement does not strike a single word from the U.S. Code or deprive private individuals of their judicially- enforceable rights under federal law. The Department of Justice can no more amend a federal statute than can the State of Arkansas, and marijuana remains just as illegal under federal law today as it was when Congress passed the Controlled Substances Act in 1970.

3. Here, Nicholas Nielsen, an employee of Defendant Randy Taylor Consulting— which as explained more fully below, does business as various forms of Harvest Health—was criminally charged with setting up an Arkansas dispensary for several of the corporate defendants. At times, Nielsen received his instructions directly from various executives of those companies. When police raided the site, however, it was only Nielsen who was criminally charged and left holding the proverbial bag.

4. Content to merely cash in on their conspiracy, Nielsen's former employer and coconspirators terminated him, arranged for him to receive several under-the-

table payments to keep quiet about what he saw while he was a Harvest
employee, and then left him to contend with the criminal justice system alone.

5.  Dealing in marijuana is racketeering activity under RICO, and those who engage
    in a pattern of racketeering activity through a corporation or other enterprise are
    liable for three times the economic harm they cause plus costs and attorneys'
    fees. Those who conspire with racketeers by agreeing to assist them are likewise
    liable. RICO also gives federal courts the power to order racketeering enterprises
    and their coconspirators to cease their unlawful operations. Accordingly, the
    Plaintiff asks this Court to award him the damages, costs, and fees he incurred as
    a result of the Defendants' actions, and to which he is entitled.

## JURISDICTION AND VENUE

6.  This Court has subject matter jurisdiction over Plaintiff's RICO claims under 18
    U.S.C. § 1964(c) and 28 U.S.C. § 1331. This Court has subject matter jurisdiction
    over Plaintiff's federal preemption claims under 28 U.S.C. § 1331, and the
    Plaintiff seeks remedies for his federal preemption claims under 28 U.S.C. §§
    1651, 2201, and 2202.

7.  Venue is proper in this Court under 28 U.S.C. § 1391(b) because some of the
    Defendants reside in Colorado and some of the Defendants do business in
    Colorado.  Venue over Plaintiff's RICO claims is also proper under 18 U.S.C.§
    1965(a) because the RICO Plaintiff resides in Colorado. Venue is also proper in
    this court under 28 U.S. Code § 1391 (b)(3) there is not a venue which would be
    convenient for most or all parties, and the Defendants are all subject to this
    court's personal jurisdiction.

# PARTIES

8. Plaintiff Nicholas Nielsen is a resident of Boulder, Colorado who was an employee of Harvest and also the Natural Wellness/Verano/Harvest joint venture at the time he was arrested in possession of the venture's marijuana, pending the completion of a cultivation facility at 4001 Comet Road, Newport, Arkansas.

9. All defendants, for the purposes of the RICO statute formed an "in-fact" RICO enterprise, whose object was the interstate trafficking of marijuana.

10. Defendant Verano Holdings, LLC is a Delaware based marijuana company whose principal place of business is 415 N Dearborn St, Chicago, IL 60654. It's managed by defendants George Archos, Sam Dorf, and Darren Weiss. It is part of an obtuse corporate structure consisting of more than 50 holding and shell companies. Plaintiff is unaware which of the multiple facilities that the marijuana in question in this case came from, but for the purposes of RICO, it's immaterial as all corporations serve to function as cogs in the overall RICO enterprise.

11. Defendant Sam Dorf is the president of Verano Holdings. Dorf is a resident of Illinois.[1]

12. Defendant George Archos is the Co-Founder, Chairman, and CEO of Verano Holdings. Archos is a resident of Illinois.

13. Defendant Darren Weiss is the general counsel and chief legal officer for Verano Holdings. Weiss is a resident of Maryland.

---

[1] The Plaintiff has personal addresses for all of the Defendants on file, Plaintiff has chosen not to list them in the complaint for privacy purposes.

14. Defendant James Leventis is the Vice President of Legal, Regulatory & Government Affairs at Verano Holdings Corp. Leventis is a resident of Illinois.

15. Defendant Chris Fotopoulos is an Executive Vice President at Verano Holdings. Fotopoulos is a resident of Illinois.

16. Defendant Edward Shen is a Vice President and Head of Mergers and Acquisitions at Verano Holdings. Shen is also an attorney. Shen is a resident of Illinois.

17. Defendant Michael Frontier was the central regional cultivation manager of the Natural Wellness/Harvest/Verano joint venture, and trafficked marijuana from Verano's facility in Illinois to Tennessee, and eventually to Arkansas. Frontier is an Illinois resident.

18. Defendant Rockview Capital, Inc., is a Delaware holding company which serves as the umbrella for a series of private equity, retirement, and investment companies doing business under the Rockview name. Their incorporated address is 1 Station Place # 7 Stamford, CT 06902.

19. Defendant Alan Bluestine is the COO of Rockview Capital. Bluestine is a New York Resident.

20. Defendant JJR Private Capital is a private equity firm located in Toronto, Canada. Their primary place of business is 5 Hazelton Avenue Suite 300, Toronto, Ontario, Canada.

21. Defendant Sol Global investments is a cannabis investment company which operates in both the US and Canada. It's United States primary place of business is 2300 E. Las Olas Blvd, 5th Floor Fort Lauderdale, FL, 33301.

22. Defendant Serruya Private Equity is a private equity firm located in Markham, Ontario, Canada. Their primary address is 210 Shields Court, Markham, Ontario.

23. Defendant Severn savings bank is a Maryland Bank located in Annapolis, Maryland that launders money for Verano, LLC. Their primary address is 200 Westgate Circle, Suite 200, Annapolis, Maryland 21401.

24. Defendant Randy Taylor Consulting is an Arizona LLC which does business as Harvest House of Cannabis[2],  as well as Harvest of Colorado, which does business as Evolab and is located at 1550 Larimer St #854, Denver, CO 80202.[3] For purposes of this Complaint, this Defendant will be referred to as Harvest and Randy Taylor interchangeably.

25. Defendant Partner Colorado Credit Union is a Colorado Credit Union which launders money for Harvest Health, Inc. They are located at 6221 Sheridan Blvd, Arvada, Colorado 80003.

26. Defendant Steve White is the CEO of Harvest House of Cannabis, is a shareholder and is a resident of Arizona.

27. Defendant Jason Vedadi is the CEO at Oasis Cannabis, at all times relevant to this complaint, he was the Executive Chairman and Principle at Harvest, Inc. Vedadi is a share-holder of Harvest and is a resident of Arizona.

28. Defendant Nicole Stanton is general counsel and vice president of Harvest House of Cannabis. Stanton is a shareholder of Harvest, and is a resident of Arizona.

---

[2] The corporate structure of Harvest Health is purposefully confusing. It trades on the Canadian Stock exchange as Harvest, and its licenses are held under the Harvest name, but it's registered as Randy Taylor, and pays its employees under the Randy Taylor Consulting name. Its employee identifications identify employees as employees of Randy Taylor Consulting DBA Harvest Health.
[3] Randy Taylor Consulting at the time of the events in this complaint also did business at the same address as Evolab, 1550 Larimer Street, #854, Denver, CO 80202.

29. Defendant Ben Kimbro is the director of public affairs at Harvest Health and Recreation. Kimbro is an Oklahoma resident.

30. Defendant Elroy Sailor is the Director and Chief Strategy Officer of Harvest Health. Sailor is a shareholder of Harvest Health. Sailor is a resident of Virginia.

31. Defendant Ana Dutra sits on the board of directors and is a shareholder of Harvest Health. Dutra is an Illinois resident.

32. Defendant Mark Barnard is the chairman of the board of Harvest Health and is a shareholder. Barnard is a resident of Arizona.

33. Defendant Eula Adams is a member of the board of directors of Harvest and is a shareholder. Adams is a resident of Denver, Colorado.

34. Defendant Alliance Global Partners is a private equity investment firm. Their primary address is 590 Madison Avenue, 28th Floor New York, NY 10022.

35. Defendant Canaccord Genuity is an investment bank headquartered in Toronto, Canada, with a principal place of business at 609 Granville Street, Suite 2200 Vancouver, British Columbia, Canada.

36. Defendant Daniel Reiner is a serial entrepreneur and special advisor to the board of Harvest Health, Inc. Reiner is a 3.66% owner of Harvest. Reiner is a resident of California.

37. Defendant The Ross Group is a Tulsa, Oklahoma construction company whose principal place of business 510 E 2nd St, Tulsa, OK 74120.

38. Defendant Warren Ross is the owner of the Ross Group, as well as a .31% owner of Defendant Natural State Wellness Enterprises, LLC. Ross is a resident of Oklahoma.

39. Defendant Natural State Wellness Enterprises, LLC ("Natural State") owned the license associated with the cultivation operation at the nexus of this complaint. Natural State Wellness Enterprises principal place of business is in Jonesboro, AR.

40. Defendant John Allison is a 7.79% owner of Natural State Wellness Enterprises, as well as the president and CEO of Home Bancshares, Inc. Allison is a resident of Arkansas.

41. Defendant Henry Wilkins V is a public health professional. He is a 17% owner of Natural State, and is an Arkansas Resident.

42. Defendant Dr. William Young is a 34% owner of Natural State, he is the president of Healthcare Medical Group, and is an Arkansas Resident.

43. Defendant Bill Carwell is a 3.2% owner of Natural State, a hemp farmer, and is an Arkansas Resident.

44. Defendant Christine L. Edmonson is a 1.04% owner of Natural State, and is an Arkansas Resident.

45. Defendant Amy Haun Hall is a 1.56% owner of Natural State, and is an Arkansas Resident.

46. Defendant Bob Dale Haun is a 2.08% owner of Natural State, and is an Arkansas Resident.

47. Defendant Leo Hauser is a 1.56% owner of Natural State, and is an Arkansas Resident.

48. Defendant Ryan W Heringer is a 1.04% owner of Natural State, and is an Arkansas Resident.

49. Defendant David Johnston is a 1.04% owner of Natural State, and is an Arkansas Resident.

50. Defendant Robert Lee Jones III 1.04% owner of Natural State, and is an Arkansas Resident.

51. Defendant Bobbi McDaniel is a 2.08% owner of Natural State, and is an Arkansas Resident.

52. Defendant Dustin McDaniel is a 1.04% owner of Natural State, is the former attorney general of Arkansas, is an attorney, and is an Arkansas Resident.

53. Defendant Bobby McDaniel is a 2.60% owner of Natural State, is an attorney, and is an Arkansas Resident.

54. Defendant Kristy McDaniel is a 1.04% owner of Natural State, and is an Arkansas Resident.

55. Defendant Marvin Parks is a 1.56% owner of Natural State, and is an Arkansas Resident.

56. Defendant Jeffery J. Ryan is a 1.56% owner of Natural State, and is an Arkansas Resident.

57. Defendant Dr. Marvin Bruce Sanderson is a 1.56% owner of Natural State, is a doctor, and is an Arkansas Resident.

58. Defendant Dr. Ladd Scriber is a 2.08% owner of Natural State, is a urologist, and is an Arkansas Resident.

59. Defendant Dr. Thomas M Stank is a 5.19% owner of Natural State, is an ophthalmologist, and is an Arkansas Resident.

60. Defendant Bill Stanley is a 1.04% owner of Natural State, and is an Arkansas Resident.

61. Defendant Bart Calhoun is a 3% owner of Natural State, an attorney, and is an Arkansas Resident.

62. Defendant Melissa Moody is a 3% owner of Natural State, and is an Arkansas Resident.

63. Defendant Martha Rouby is a 2% owner of Natural State, and is an Arkansas Resident. Collectively, the Defendants listed in Paragraph 38 through 62 are referred to as "the Natural Wellness Defendants."

## FACTUAL ALLEGATIONS

### Federal Law Prohibits the Production and Distribution of Medical Marijuana

64. Congress passed the CSA in 1970 as Title II of the Comprehensive Drug Abuse Prevention and Control Act.  84 Stat. 1236. Among the purposes of the CSA was to reduce drug abuse and the illegitimate traffic in controlled substances in the United States by prohibiting the unauthorized production, distribution, or possession of controlled substances.

65. When it passed the CSA, Congress found that "[t]he illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people," 21 U.S.C. § 801(2), and that "[a] major portion of the traffic in controlled substances flows through interstate and foreign commerce," id. § 801(3).

66. The CSA seeks to address the social and economic ills caused by drug abuse and drug trafficking by prohibiting the illicit drug trade.

67. The CSA categorizes drugs according to a series of schedules, with the most dangerous drugs falling under Schedule I. See id. § 812(b). Schedule I drugs have "a high potential for abuse." Id. § 812(b)(l). In enacting the CSA, Congress classified marijuana as a Schedule I drug. Id. § 812(c). Congress thus deemed marijuana to have a high potential for abuse. Id. § 812(b)(l). By classifying marijuana as a Schedule I drug, as opposed to listing it on a lesser schedule, Congress made the manufacture, distribution, or possession of marijuana a criminal offense, with the sole exception being use of the drug as part of a Food and Drug Administration preapproved research study. Id. §§ 823(f), 841(a)(l), 844(a).

68. The large-scale manufacture and distribution of marijuana is a serious felony under the CSA. A first-time offender convicted of producing or distributing 1,000 or more marijuana plants is subject to a sentence of 10 years to life imprisonment.  Id. § 841(b)(l)(A). Growing 100 or more marijuana plants subjects the first-time offender to a sentence of 5 to 40 years imprisonment.  Id. § 84l(b)(l)(B).  The cultivation and sale of smaller amounts of marijuana is punishable by maximum sentences that can be as long as 20 years. See id. § 841(b)(l)(C), (D).

69. The CSA also criminalizes the possession of marijuana. Unless otherwise authorized by federal law, possession of marijuana by a first-time offender is punishable by up to 1 year of imprisonment. Id. § 844(a).

70. In addition to its prohibitions on cultivation, sale, and possession of marijuana, the CSA also forbids a wide range of other activities connected with the operations of a marijuana business.  Thus, it is a crime to possess "any

equipment, chemical, product, or material" with the intention of using it to manufacture marijuana, id. § 843(a)(6), or to distribute any such material with the knowledge that it will be used to manufacture marijuana, id. § 843(a)(7). The CSA bars the use a telephone, email, mail, or any other "communication facility" in furtherance of the manufacture or sale of marijuana, id. § 843(b), and it is a federal crime to use the Internet to advertise the sale of marijuana, id. § 843(c)(2)(A).

71. Reinvesting the proceeds from marijuana operations is also a crime, id. § 854(a), as is knowingly facilitating a financial transaction involving funds derived from manufacturing and selling marijuana, 18 U.S.C. §§ 1956, 1957, 1960. It is also a crime to knowingly lease, rent, maintain, manage, or control a place where marijuana is manufactured or sold. 21 U.S.C. § 856. Leading a group of five or more people who commit a continuing series of federal marijuana crimes is an especially serious offense. Id. § 848. And attempting or conspiring to commit most of those crimes is also a criminal offense.  See id. § 846; 18 U.S.C. §§ 1956(a)(l), 1956(h), 1957(a).

72. These criminal prohibitions on virtually every aspect of the marijuana business make the federal policy embodied in the CSA unmistakably clear: marijuana is a dangerous drug that is banned throughout the United States. And because RICO defines most violations of the CSA as "racketeering activity,' see 18 U.S.C. § 196l(l)(D), any business engaged in the commercial cultivation and sale of medical marijuana is a criminal enterprise for purposes of federal law. Those who conduct or conspire to assist such enterprises are subject to the severe criminal sanctions and civil liability that RICO imposes. See id. § 1962(c), (d).

<u>Arkansas Legalizes Medical Marijuana and the Defendants Attempt to Capitalize on it</u>

73. In November of 2016, the voters of Arkansas passed an amendment to the state constitution, titled the Arkansas Medical Cannabis Act, Issue 7, which legalized medical marijuana in the state of Arkansas.

74. The first paragraph of the Amendment to the constitution is as follows:

AN AMENDMENT TO THE CONSTITUTION MAKING THE MEDICAL USE OF MARIJUANA LEGAL UNDER ARKANSAS STATE LAW, BUT ACKNOWLEDGING THAT MARIJUANA USE, POSSESSION, AND DISTRIBUTION FOR ANY PURPOSE REMAIN ILLEGAL UNDER FEDERAL LAW.

75. As described below, in their search to profit on Arkansas' new law, every one of the Natural Wellness defendants participated in the RICO activity, knowing that the state constitution acknowledged that any participation in the state marijuana scheme was tantamount to committing a federal offense.

76. In February of 2018, Natural State was selected as one of five companies to construct and operate medical marijuana facilities in Arkansas. Natural State Wellness Enterprises, LLC, is an Arkansas Limited Liability Corporation that was formed for the purposes of obtaining an Arkansas Medical Marijuana License. Its principal place of business was 1201 Fleming Ave, Jonesboro, Arkansas.

77. At the time, Verano was involved in the business of growing, distributing, and selling cannabis and cannabis-infused products in multiple states.  And thus, with several other defendants, it made moves to expand the criminal enterprise through various financing and corporate decisions. For instance, in October 2018, Defendant SGI entered into an equity financing arrangement with Verano.

14

Under that agreement, SGI, through certain subsidiaries, purchased 4,049,701 Class B Units of Verano for US$21.73 per unit representing US$88,000,000 at a US$480,000,000 pre-money valuation. Effectively, SGI funded the RICO operation with between $88m and $480m of funding, knowing clearly that Verano was operating an illegal enterprise under 18 U.S.C. § 1961(1)(0).

78. SGI and its officers discussed the investment with Verano and its officers on both the telephone and via e-mail, which violates 21 U.S.C. § 846 and is racketeering activity under 18 U.S.C. § 1961(1)(D). Indeed, the CSA bars the use a telephone, email, mail, or any other "communication facility" in furtherance of the manufacture or sale of marijuana, id. § 843(b), and it is a federal crime to use the Internet to discuss the sale of marijuana, id. § 843(c)(2)(A). Reinvesting the proceeds from marijuana operations is also a crime, id. § 854(a), as is knowingly facilitating a financial transaction involving funds derived from manufacturing and selling marijuana, 18 U.S.C. §§ 1956, 1957, 1960.

79. SGI was aware that Verano was engaged in the manufacturing and selling of marijuana at the point it engaged in the equity financing agreement with Verano in violation of 21 USC § 843(b) and 21 USC § 846.

80. While discussing a merger with Harvest, Verano was actively operating in Maryland, under the name Zen Leaf.

81. Zen Leaf at all times relevant to this complaint, and currently, engages in the interstate trafficking of marijuana in violation of 21 USC § 841(a)(1).

82. While engaging in this federally illegal activity, along with other alleged violation of the controlled substances act, Verano engaged with a local bank in Maryland, Severn Bank, to launder money for them.

83. Severn took in illicit marijuana profits from Verano, operating as Zen Leaf, including large sums of cash, and converted the money to direct deposits into Zen Leaf employees under the RedMed LLC shell company name, and subsequently as VZL Staffing.

84. Severn was aware that Verano was engaged in federally illegal drug trafficking, and conspired with Verano to further its aims of laundering drug money.

85. Severn discussed the best methods to launder money, and conspired to send laundered funds via the internet, in violation of 18 USC § 1952.

86. Severn's participation in the RICO enterprise made Verano a desirable asset for Harvest to purchase. But for their money laundering, Verano may not have been able to operate in Maryland.

87. Verano being a Multistate operator ("MSO") of multiple Cannabis cultivation sites and dispensaries made them an attractive target for a Harvest takeover.

88. Severn was and is an integral part of Verano's drug trafficking operations in Maryland, which furthered the RICO Enterprise in the instant case.

<u>The Natural Wellness Defendants, Harvest, and Verano Enlist Plaintiff's Assistance to Construct Their Cultivation Facility in Arkansas</u>

89. As 2018 progressed, the Natural Wellness Defendants expanded their reach. In December of 2018, Natural State Wellness Enterprises broke ground on a 35,000 square foot cultivation facility in Newport, Arkansas, at 4001 Comet Road, Newport, Arkansas. The facility to was to be constructed by Defendant The Ross Group ("Ross"), with a greenhouse to be constructed on the site by Conley Greenhouses of California.

90. To enable Harvest and Verano—which, as described later, were operating as a single enterprise for this purpose—to grow marijuana on the land, The Ross Group, at the behest of Natural Wellness, contracted to construct facilities specially designed for marijuana cultivation. The Ross Group agreed to construct a building with lighting, water, and security systems custom built for growing marijuana. At 35,000 square feet, the building is one of the largest marijuana cultivation facilities in the Southern US. Possessing or constructing these facilities, equipment, products, and materials for the cultivation and processing of marijuana violates 21 U.S.C. § 843(a)(6) and is racketeering activity under 18 U.S.C. § 1961(1)(D).

91. The facility was purpose-built for the purposes of cultivating marijuana, and Natural State, Ross, and Conley were all aware of the purpose of the construction endeavor – to cultivate marijuana. Leasing or maintaining property for the cultivation of marijuana is a crime under 21 U.S.C. § 856 and is racketeering activity under 18 U.S.C. § 1961(1)(D).

92. On top of constructing the facility, Ross placed a project manager, Trey Andrews, inside of the facility to ensure its smooth operation. The Ross Group's project manager's responsibility was to manage the process of constructing the facility, in conjunction with superintendent Chip Gibson, prior to its operation as a federally illegal marijuana cultivation facility in violation of 21 USC § 841(a)(1), and 21 U.S.C. § 856.

93. The project manager had been in the facility prior to the Plaintiff's arrival in May and was there at least up until the Plaintiff's arrest in January 2020.

94. The Ross Group is not in the business of cultivating marijuana, so their intimate involvement with the operations of the facility violates 21 USC § 856, as they were actively involved in the design of the building intended to commit a federal offense, and were on site after the 21 USC § 841(a)(1) activity of manufacturing with the intent to distribute had already begun.

95. Additionally, Warren Ross, owner of the Ross group, was also an owner of Natural State Wellness, for whom the facility was constructed. Warren Ross is the superior at The Ross Group to both Chip Gibson, and his direct report, Trey Andrews.

96. Ross, Natural Wellness, and Natural Wellness' members conspired to construct the facility on the land on Comet Road for the purposes of cultivating marijuana. Such conspiracy violates 21 U.S.C. § 846 and is racketeering activity under 18 U.S.C. § 1961(1)(D).

97. Natural Wellness obtained a license to cultivate marijuana from the Arkansas Alcohol and Beverage commission, paying $100,000 for the license, and securing a $500,000 bond from a John Doe Defendant. The license holders of the medical cannabis license and Natural Wellness conspired to cultivate and distribute marijuana in violation of the CSA. Such conspiracy violates 21 U.S.C. § 846 and is racketeering activity under 18 U.S.C. § 1961(1)(D).

98. In agreeing to both construct, finance, and manage the operations of the marijuana cultivation facilities at 4001 Comet Rd, all named defendants conspired to violate numerous federal laws as it relates to marijuana cultivation and trafficking. The Comet Rd. operations violate numerous provisions of the CSA: maintaining the premises violates 21 U.S.C. § 856, growing, processing, and

selling marijuana there violates 21 U.S.C. § 841(a), and maintaining the necessary

chemicals, equipment, and materials violates 21 U.S.C. § 843(a)(6). All

defendants have used the telephone, email and other communications facilities in

furtherance of their drug conspiracy, thus violating 21 U.S.C.§ 843(b). Each of

those federal drug crimes is racketeering activity under 18 U.S.C. § 1961(1)(O).

## Harvest and Verano's Ill-Fated Attempt to Agreement to Merge Companies Leads to Plaintiff's Arrest

99. With the Arkansas plant in motion and on target, on March 11, 2019, Harvest and

Verano entered into a binding agreement for Harvest to acquire Verano. Under

the agreement, Harvest would acquire, directly, or indirectly, all of the issued and

outstanding membership units of Verano for a purchase price of approximately

$850,000,000, based upon a price of C$8.79 per share of Harvest. The definitive

agreements were executed on April 22, 2019.

100.     Like Verano, Harvest is also a grower, distributor, and seller of cannabis

and cannabis-infused products throughout several states.

101.     On September 4, 2019, Verano and certain subsidiaries and affiliates

signed a secured promissory note in favor of Harvest Enterprises, Inc. and

Harvest of Maryland, Inc. (affiliates of Harvest) to borrow up to US$16,000,000

at a 5.0% per annum rate of interest. A total of US$8,000,000 was drawn on the

secured promissory note, which was used by Verano for general corporate

purposes, working capital and growth opportunities.

102.     Harvest was already in discussions to manage the Natural Wellness grow in Arkansas at this point, and construction of the facility on Comet Rd. was well under way.

103.     According to Verano's documents filed with the Canadian stock exchange on which Verano is now publicly traded, "the parties subsequently agreed not to proceed with the business combination with Harvest and, on March 25, 2020, entered into a termination agreement and mutual release. The business combination did not proceed due to prolonged obstacles in meeting requirements for state and local regulatory authorities needed to transfer ownership and operational licenses, adverse capital market conditions and a challenging environment for asset sales. No units were issued as the transaction with Harvest did not proceed to closing." The secured promissory note was fully repaid on September 4, 2020.

104.     Notably absent from Verano's disclosure is that the Harvest and Verano merger was slowed by the Department of Justice Antitrust unit. Indeed, on July 11, 2019, the Department of Justice issued a formal Request of Additional Information and Documentary Materials to Verano and Harvest, regarding their contemplated merger.  Harvest and Verano submitted this information on November 5, 2019.

105.     Despite this additional request from the DOJ and prior to the completion date of the merger, Verano employees were already working at Harvest as Harvest employees. On April 19, 2019, Michael Frontier, then a Verano employee, was introduced to the Plaintiff as the "Central Regional Cultivation Manager" of Harvest Health by Brett Souraf, Harvest's Assistant Director of Cultivation.

106. Like the other four companies selected by the state of Arkansas to cultivate medical marijuana, the Defendants faced a problem: They could now grow cannabis, but how would they obtain the cannabis in the new state to grow it? It's a chicken or egg problem that every licensed marijuana cultivator faces: they can grow cannabis, but have no means to obtain the new plant materials that does not violate both state and federal law. Verano's solution, according to their general counsel Darren Weiss, is to traffic marijuana from existing grows in other states into new facilities.

### Frontier, at the Behest of Harvest, Verano, and Natural Wellness, Traffics Marijuana Across State Lines

107. Frontier, in addition to being Central Regional Cultivation Manager of the Defendants' marijuana cultivation, was also tasked as part of his job duties with trafficking marijuana from Illinois to Arkansas. Frontier was instructed by his employer to go to a Verano grow site in Illinois, take clones from the facility, and bring them to the Plaintiff in Arkansas.

108. Frontier did just that. In June 2019, he went to the Verano facility in Illinois, inartfully took clippings from the Verano marijuana, and secreted them in Whole Foods salads. The four Verano strains that Frontier selected and then trafficked were: Cherry Gorilla, Purple Punch, Motor breath, and Sundae Driver. On June 13, 2019, he then took the marijuana-laced salads with him on a commercial flight from Chicago to Memphis, Tennessee, where he rented a car and drove the Verano marijuana to the Plaintiff in Arkansas.



109.

110.  The Plaintiff then unpacked the clones and maintained them while waiting for the facility, being constructed by The Ross Group and being constructed solely for the purpose of cultivating marijuana. Likewise, the grow inside the Plaintiff's apartment in Jonesboro was constructed solely for the purpose of maintaining the Defendants' marijuana until the Arkansas Alcohol and Beverage Control signed off on being able to grow marijuana in the Comet Rd. facility.

111.  The home-grow in the apartment in Jonesboro was also financed by Harvest, who reimbursed the Plaintiff for equipment he purchased to support the grow.



112.  In fact, on November 7, 2019, Nicki Lewis, Director of Compliance & Licensing for Harvest, instructed the Plaintiff to move the clones from his home into the clone room at the Comet Rd. facility.[4]

---

[4] A clone is a cannabis plant that is a genetic copy of the mother plant. Growers typically select to raise clones instead of seeds when they would rather not risk getting a plant that's male or with poor characteristics (e.g. low yield, undesirable smell, etc.).

On Nov 7, 2019, at 4:26 PM, Nicki Lewis
<nlewis@harvestinc.com> wrote:


Move those plants into the clone room.  We
officially have our executed clone room
authorization.

113. After the November confirmation from Nicki Lewis, the Plaintiff continued to
store the Verano plants in his apartment. According to Brett Souraf, the Plaintiff
needed to store the plants in the apartment grow-house until Natural Wellness
received approval for the "flower room" of the Comet Rd site—as they had initially
only passed inspection for the "clone room." The timing was critical. Verano,
Harvest, and Natural Wellness needed Plaintiff to continue creating as many
clones as possible from the mother plants in his apartment, so that when the
"flower room" at Comet Rd passed inspection, the Defendants would have as
many plants as possible to start flowering. Following Brett's orders, the Plaintiff
cloned from the mother plants in his apartment at least three to four times. In
sum, Verano, Harvest, and Natural Wellness tasked Frontier with breaking
Illinois, Tennessee, and Arkansas state laws against marijuana trafficking – as
well as federal law against trafficking.

114. Further, Harvest told the Plaintiff that his actions were sanctioned by the state of
Arkansas, because the state has a Don't Ask, Don't Tell policy about marijuana. In
truth, the Arkansas constitutional amendment says that "DISPENSARY AND

24

CULTIVATION FACILITY AGENTS SHALL NOT BE SUBJECT TO CRIMINAL OR CIVIL PENAL TIES OR OTHER FORMS OF DISCRIMINATION FOR ENGAGING IN OR ASSISTING WITH THE PATIENTS' MEDICAL USE OF MARIJUANA." Nothing in the amendment provides for medical cultivation for commercial purposes inside a private residence.

115. In fact, Arkansas does not have a Don't Ask, Don't Tell policy about marijuana. And predictably, when the Plaintiff's home was raided, the Arkansas Alcohol and Beverage control arrested him on January 23, 2020, for the cultivation and possession of marijuana.

116. Plaintiff was subsequently terminated by Harvest as a result of his arrest—which only occurred but for the Defendants' actions. Plaintiff consequently found himself without a job and facing criminal charges, even though he was assured by his employer and those acting as his employers or Harvest's coconspirators, that his actions were not illegal.

117. The marijuana in the Plaintiff's possession was provided by Verano, Dorf, Archos, Leventis, Fotopoulos, Shen, and Weiss, who had been growing the marijuana in violation of 21 U.S.C. § 856 and 21 USC § 848.

118. The grow was funded by SGI, Rockview Capital, JJR Private Capital, Bluestine, Serruya Private Equity, and parties unknown in violation of 18 U.S.C. §§ 1956, 1957, and 1960.

119. The marijuana was then trafficked to Arkansas at the behest of Harvest, White, Vedadi, Stanton, Barnard, Verano, Dorf, Leventis, Fotopoulous, Shen, and Weiss, by Frontier in violation of Tennessee Criminal Code § 39-17-401, Arkansas

Criminal Code § 5-64-401, and 21 USC § 841(a)(1), 21 USC § 846, 21 USC § 843(b), 18 USC § 1952 and 21 USC § 848.

120. Upon the plants' entering the state, Harvest stored the marijuana in the Plaintiff's home until it could be transferred and cultivated in the Natural Wellness-owned facility. Harvest and its officers discussed the conspiracy to trafficking marijuana with Verano and its officers via both telephone and e-mail. The marijuana was sold to Arkansas residents financially benefitting all defendants.

121. In December of 2019, Ben Kimbro, Director of Public Affairs at Harvest Health & Recreation Inc., formed a shell company in Tulsa, Oklahoma, Blue Maise, LLC.

122. Operating out of a small, plain, house in Tulsa Oklahoma, Kimbro would, at the orders of Harvest, pay the client hush money.

123. Harvest had told the Plaintiff that if he got in trouble for the possession of the medical marijuana, that Harvest would "look out for him." Kimbro assured the Plaintiff that they would find him other employment should the criminal case result in the loss of his license.

124. Kimbro began wiring the Plaintiff $2,020 per month in hush money, attempting to assure that the Plaintiff would not explain the scheme, explain that Verano had given him the marijuana through Frontier, and that he had been directed by Harvest to cultivate the marijuana in an apartment grow, financed by Harvest.

125. Kimbro initially sent $2,020 to the Plaintiff through the Blue Maise account, and then a last $4,040 at once, before ceasing communication with the Plaintiff, leaving a legally unsophisticated employee to navigate the crushingly stressful situation by himself, while a group of billionaires continued to profit from the Plaintff's injuries.



126.

127. During the course of his employment, the Plaintiff, though he was working under the Natural State Wellness Enterprises, LLC license, was employed by Harvest Health, Inc., who paid him from their Randy Taylor Consulting shell company knowingly assisted by Partner Credit Union's money laundering of illegal marijuana profits.

128. Marijuana companies, recognizing that their business is a violation of federal law, often create shell companies to create enough distance between the company engaged in the federally illegal actions and a reputable corporate entity so that they can use banking resources. Banks, as required by various Bank Secrecy Act and Ant-Money Laundering laws, cannot knowingly handle money derived by illegal drugs.

129. Randy Taylor Consulting is publicly known as a Harvest shell company and Partner Credit Union of Colorado laundered money for Harvest, knowing that what they were doing was facilitating a federally illegal drug trafficking operation.

Partner took in money from Harvest, knowing that it was the proceeds of some
form of unlawful activity, and issued paychecks from the Randy Taylor Consulting,
LLC.

130. Partner engaged in these proceedings with the intent to promote the carrying on
of specified unlawful activity; in short, they laundered drug money from Harvest
to allow Harvest to continue its illegal drug trafficking organization, in the hopes
of receiving more business from Harvest and its shell companies and agents.

131. Prior to being terminated for being arrested for cultivating the Verano/Harvest
marijuana for Natural State Wellness, the Plaintiff had been receiving direct
deposits from Partner Credit Union in Arvada, CO in violation.

132. Partner violated 18 U.S. Code § 1956 when they laundered millions of dollars for
Harvest by converting "dirty" Harvest money for "clean" Randy Taylor consulting
money. This is racketeering activity under 18 U.S.C. § 1961(1)(D).

133. Partner knowingly took in the proceeds of a federally illegal RICO enterprise and
issued paychecks, converting "dirty" money to "clean" money under 18 U.S. Code §
1956. This is racketeering activity under 18 U.S.C. § 1961(1)(D).

134. Partner was an essential part of the Harvest portion of the RICO enterprise
described throughout the complaint, conspiring with Harvest and Randy Taylor
Consulting to facilitate the interstate transfer of narcotics in violation of 21 USC §
846. This is racketeering activity under 18 U.S.C. § 1961(1)(D).

135. Partner subsequent to its laundering of money, invested the illegal Harvest drug
proceeds into other financial instruments, in violation of 21 U.S. Code § 854.

136. In December of 2019 and prior to the Plaintiff's arrest, Harvest received a crucial round of investment into its coffers thanks to a debt swap for securities lead by Canaccord Genuity and Alliance Global Partners.

137. Canaccord and Alliance were in discussions with Harvest prior to the swap, and were aware that Harvest was in need of cash to continue its marijuana trafficking operation – part of which was located at the 4001 Comet Rd. building jointly owned by Harvest and Natural State Wellness – cultivating Verano's marijuana.

138. Canaccord and Alliance discussed the swap with Harvest via the telephone and e-mail, in violation of 18 USC § 1952 and 21 USC § 843(b).

139. Without the swap, Harvest would have been unable to continue their drug trafficking, and Canaccord and Alliance, knowing that Harvest was engaged in interstate drug trafficking, assisted in the facilitation of a drug felony, which is racketeering activity.

140. On December 20, 2019, Harvest added Daniel Reiner as a special adviser to Harvest's Board of directors, giving him operational control of a drug trafficking organization in violation of multiple sections of the CSA.

141. Prior to joining Harvest's board, Reiner discussed the proposition with senior leadership of Harvest, in violation of 18 USC § 1952 and 21 USC § 843(b), which is racketeering activity.

142. Subsequent to Reiner's accepting of his position as senior adviser, and commensurate with that acceptance, Reiner was made partial owner of Harvest, in violation of 21 USC § 841(a)(1), which is racketeering activity.

## CLAIMS FOR RELIEF

## COUNT I

### Violation of 18 U.S.C. § 1962(c)

Against Verano Holdings, LLC, Sam Dorf, George Archos, Darren Weiss, James
Leventis, Chris Fotopoulos, Edward Shen, Michael Frontier, Rockview Capital,
JJR Private Capital, Alan Bluestine, Sol Global Investments, Serruya Private
Equity, and Severn Bank

143. Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

144. RICO creates a private right of action for "[a]ny person injured in his business or
property by reason of a violation of [18 U.S.C. § 1962]." 18 U.S.C. § 1964(c).
Under 18 U.S.C.

145. § 1962(c), it is "unlawful for any person employed by or associated with any
enterprise engaged in, or the activities of which affect, interstate or foreign
commerce, to conduct or participate, directly or indirectly, in the conduct of such
enterprise's affairs through a pattern of racketeering activity." Verano Holdings,
LLC, Sam Dorf, George Archos, Darren Weiss, James Leventis, Chris Fotopoulos,
Edward Shen, Michael Frontier, Rockview Capital, JJR Private Capital, Alan
Bluestine, Sol Global Investments, and Serruya Private Equity each violated this
provision of 18 U.S.C. § 1962.

146. All of the RICO Defendants formed an association-in-fact enterprise within the
meaning of 18 U.S.C. § 1961(4) by establishing contractual and other
relationships with each other, collaborating to develop the 4001 Comet Rd
property for medical marijuana cultivation, and agreeing design and construct a
building for the purposes of medical marijuana cultivation, and the subsequent

sale of medical marijuana, which did in fact occur. This enterprise enables the RICO Defendants to more efficiently achieve their collective purpose.

147. Funding, goods, and services procured by the enterprise have moved in interstate commerce and the enterprise plans to sell marijuana in interstate commerce.

148. Each defendant had some part in directing or benefitting from the enterprise's affairs.

149. Verano Holdings, LLC cultivated and trafficked marijuana across state lines in violation of 21 USC § 841(a)(1), 21 USC § 856, and 18 USC § 1952.

150. Verano Holdings, LLC conspired to cultivate marijuana for sale, conspired to sell marijuana, and benefitted financially from the sale of marijuana in violation of 21 USC § 846, 21 USC 841(b)(1)(A), 21 USC § 843(b), and  21 USC § 848.

151. Rockview Capital, Bluestine, SGI, JJR Private Capital, and Serruya Private Equity financed the distribution and cultivation operation in exchange for ownership interest in the company in the form of shares of stock in violation of 21 USC § 843(b).

152. Rockview Capital, Bluestine, SGI, JJR Private Capital, and Serruya Private Equity were aware that they were financing an interstate drug trafficking operation when they gave money to defendant Verano Holdings, LLC in violation of 21 USC § 846.

153. Rockview Capital, Bluestine, SGI, JJR Private Capital, and Serruya Private Equity communicated about financing an interstate drug trafficking and drug distribution operation via both the telephone and e-mail in violation of 21 USC § 843(b).

31

154. Dorf, Archos, Weiss, Leventis, Fotopoulos, and Shen operated a drug trafficking and distribution network, cultivating and selling marijuana in Illinois, Florida, Maryland, and Arkansas in violation of 21 USC 841(b)(1)(A).

155. Dorf, Archos, Weiss, Leventis, Fotopoulos, and Shen conspired to operate and grow a drug trafficking and distribution network, cultivating and selling marijuana in Illinois, Florida, Maryland, and Arkansas in violation of 21 USC § 846.

156. Dorf, Archos, Weiss, Leventis, Fotopoulos, and Shen communicated about the management, growth, and day to day operations of a drug trafficking and distribution network, cultivating and selling marijuana in Illinois, Florida, Maryland, and Arkansas in violation of 21 USC § 843(b).

157. Dorf, Archos, Weiss, Leventis, Fotopoulos, and Shen lead an organization of greater than five or more individuals who engaged in a continuing series of drug violations for which they received substantial income in violation of 21 USC § 848.

158. Michael Frontier distributed marijuana from the state of Illinois to the state of Arkansas in violation of 21 USC § 841(a)(1) and 18 USC § 1952.

159. Michael Frontier discussed the distribution of marijuana via the telephone in violation of 21 USC § 843(b).

160.    Verano Holdings, LLC, Sam Dorf, George Archos, Darren Weiss, James Leventis, Chris Fotopoulos, Edward Shen, Michael Frontier, Rockview Capital, JJR Private Capital, Alan Bluestine, Sol Global Investments, and Serruya Private Equity have all conducted or participated in the conduct of the affairs of Natural State Wellness Enterprises, LLC through a pattern of racketeering activity. They

collectively operated, financed, and ultimately delivered marijuana to Natural
State Wellness Enterprises Arkansas facility, managed by Harvest Health that
violates 21 U.S.C. § 856.

161. They also conspired, in violation of 21 U.S.C. § 846, to work together with the rest
of the enterprise for the success of Natural State Wellness Enterprises open-
ended illegal medical marijuana business. They used communication facilities to
enter into their equity swap and financing agreements and their drug conspiracy
in violation of 21 U.S.C. § 843(b).

162. Verano Holdings, LLC, Sam Dorf, George Archos, Darren Weiss, James Leventis,
Chris Fotopoulos, Edward Shen, Michael Frontier already possess materials,
goods, and facilities for the manufacture of marijuana in violation of 21 U.S.C. §
843(a)(6). All of those crimes are racketeering activity under 18 U.S.C. §
1961(1)(O).

163. The racketeering activities of Verano Holdings, LLC, Sam Dorf, George Archos,
Darren Weiss, James Leventis, Chris Fotopoulos, Edward Shen, Michael
Frontier, Rockview Capital, JJR Private Capital, Alan Bluestine, Sol Global
Investments and Serruya Private Equity have directly and proximately injured
the Plaintiff.

164. Verano Holdings, LLC, Sam Dorf, George Archos, Darren Weiss, James Leventis,
Chris Fotopoulos, Edward Shen, Michael Frontier, Rockview Capital, JJR Private
Capital, Alan Bluestine, Sol Global Investments, and Serruya Private Equity each
understood that their collective efforts to cultivate marijuana in Illinois and
across the country could only be accomplished through a pattern of racketeering
activity.

165. Specifically, all understood and agreed that Verano Holdings, LLC was involving in the cultivation and sale of marijuana, and that all parties would violate the CSA by cultivating medical marijuana and selling it, 21 U.S.C. § 841(a), possessing the equipment and materials necessary for marijuana cultivation, id. § 843(a)(6), and maintain premises in Illinois and other states for cultivating and selling medical marijuana, id. §§ 849, 856.

166. Sam Dorf, George Archos, Darren Weiss, James Leventis, Chris Fotopoulos, Edward Shen all realized that they were violating the CSA by controlling an interstate drug trafficking operation that cultivated and sold thousands of pounds of marijuana each year in violation of 21 USC § 841(a)(1), 21 USC § 846, 21 USC § 843(b), 21 USC § 848, and 18 USC § 1952.

167. Rockview Capital, JJR Private Capital, Alan Bluestine, Sol Global Investments, and Serruya Private Equity each collectively and individually understood that they were investing and purchasing ownership in a company involved in interstate drug trafficking, and that their financing was directly related to Verano's ability to violate the CSA. Each financier conspired to violate the CSA in violation of 21 USC § 846, and the communications related to violating the CSA took place over the phone and email in violation of 18 USC § 1952 and 21 USC § 843(b).

168. Severn Bank received income directly from Verano, an interstate marijuana drug trafficking operation, and invested in that income into businesses which are engaged in interstate commerce, in violation of 21 U.S. Code § 854.

169.  Severn Bank received income directly from Harvest, an interstate marijuana drug trafficking operation, and invested in that income into securities, in violation of 21 U.S. Code § 854.

170.  Each of those crimes is racketeering activity, and together they form an ongoing pattern.

## COUNT II

## Violation of 18 U.S.C. § 1962(d)

Against Verano Holdings, LLC, Sam Dorf, George Archos, Darren Weiss, James Leventis, Chris Fotopoulos, Edward Shen, Michael Frontier, Rockview Capital, JJR Private Capital, Alan Bluestine, Sol Global Investments, Serruya Private Equity, and Severn Bank

171.  Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

172. RICO creates a private right of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." 18 U.S.C. § 1964(c). Under 18 U.S.C.

173. Pursuant to § 1962(d), it is "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

174. The RICO Defendants, for their mutual and individual profit, agreed and conspired to violate 18 U.S.C. § 1962(c) by forming an association-in-fact enterprise for the purpose of cultivating medical marijuana in the state of Illinois affecting interstate commerce. The RICO Defendants knew that this patently unlawful scheme could only be accomplished through a pattern of racketeering activity, for maintaining a premises at which marijuana is cultivated and sold, cultivating and selling marijuana, and possessing the goods and materials needed

to cultivate and process marijuana are all crimes under the CSA. See, e.g., 21 U.S.C. §§ 841(a), 843(a)(6), 856.

175. Funding, goods, and services procured by Defendants in furtherance of their association-in-fact enterprise for the purpose of cultivating and selling medical marijuana have moved in interstate commerce, and the enterprise currently sells marijuana across the country, and the specific marijuana trafficked across the country is currently being sold in Arkansas.

176. The RICO Defendants have engaged in racketeering activity in furtherance of their conspiracy to violate 18 U.S.C. § 1962(c). All of the RICO Defendants violated 21 U.S.C. § 846 by agreeing and conspiring to assist in the establishment of the Verano Holdings, LLC marijuana grows and financing the operation, facilitating drug trafficking and sales across the country.

177. Racketeering activities undertaken in furtherance of the RICO Defendants' conspiracy to violate 18 U.S.C. § 1962(c) have injured the Plaintiff.

178. Specifically, Verano Holdings, LLC, Sam Dorf, George Archos, Darren Weiss, James Leventis, Chris Fotopoulos, Edward Shen, Michael Frontier, Rockview Capital, JJR Private Capital, Alan Bluestine, Sol Global Investments, and Serruya Private Equity have all conducted or participated in the conduct of the affairs of Natural State Wellness Enterprises, LLC through a pattern of racketeering activity.

179. They collectively operated, financed, and ultimately delivered marijuana to Natural State Wellness Enterprises Arkansas facility, managed by Harvest Health in violation of 21 U.S.C. § 856.

180.     They also conspired, in violation of 21 U.S.C. § 846, to work together with the rest of the enterprise for the success of Natural State Wellness Enterprises open-ended illegal medical marijuana business. They used communication facilities to enter into their equity swap and financing agreements and their drug conspiracy in violation of 21 U.S.C. § 843(b).

181. Verano Holdings, LLC, Sam Dorf, George Archos, Darren Weiss, James Leventis, Chris Fotopoulos, Edward Shen, Michael Frontier already possess materials, goods, and facilities for the manufacture of marijuana in violation of 21 U.S.C. § 843(a)(6). All of those crimes are racketeering activity under 18 U.S.C. § 1961(1)(O).

182. Verano Holdings, LLC, Sam Dorf, George Archos, Darren Weiss, James Leventis, Chris Fotopoulos, Edward Shen, Michael Frontier each understood that their collective efforts to traffic marijuana to the Natural Wellness operations at 4001 Comet Rd. could only be accomplished through a pattern of racketeering activity.

183. Specifically, all understood and agreed that Natural State Wellness Enterprises would hire Harvest Health and in effect Verano employees, pending DOJ approval, to manage the operation, cultivate marijuana, and that all parties would violate the CSA by cultivating medical marijuana and selling it, 21 U.S.C. § 841(a), possessing the equipment and materials necessary for marijuana cultivation, id. § 843(a)(6), and maintain the premises at 4001 Comet Rd. for cultivating and selling medical marijuana, id. §§ 849, 856.

184. Dorf and Archos solicited funding from Rockview Capital, JJR Private Capital, Alan Bluestine, Sol Global Investments, and Serruya Private Equity, with the understanding that the funding would go to fund the Verano, LLC RICO

enterprise, which was at the time, and is today, engaged in the federal offense of large-scale marijuana production and trafficking, in violation of 21 USC § 841(a)(1).

185. At the time of the solicitation for funding, conducted via phone and email in violation of 21 USC § 843(b) and 18 USC § 1952, Verano's board, specifically Archos and Dorf, conspired with from Rockview Capital, JJR Private Capital, Alan Bluestine, Sol Global Investments, Severn Bank, and Serruya Private Equity in violation of 21 USC § 846, to fund their illegal operations.

186. During the times referenced in this complaint, Severn Bank laundered the drug proceeds over the entirety of the operation for Verano and its shell companies, repeatedly violating 18 U.S. Code § 1956.

187. Severn was aware that Verano was engaged in federally illegal drug trafficking, and conspired with Verano to further its aims of laundering drug money.

188. Severn discussed the best methods to launder money, and conspired to send laundered funds via the internet, in violation of 18 USC § 1952.

189. Severn's participation in the RICO enterprise made Verano a desirable asset for Harvest to purchase. But for their money laundering, Verano may not have been able to operate in Maryland.

190. Verano being a Multistate operator ("MSO") of multiple Cannabis cultivation sites and dispensaries made them an attractive target for a Harvest takeover.

191. Sam Dorf, George Archos, Darren Weiss, James Leventis, Chris Fotopoulos, Edward Shen conspired in violation of 21 USC § 846 to use the funding to expand their 21 USC § 841(a)(1) marijuana cultivation and drug trafficking operation,

which consisted of hundreds of employees, and the operational control of this

organization violates 21 USC § 848 as there are more than 5 individuals engaged

in a continuing and ongoing series of drug violations, from which the named

conspirators derived very substantial income.

192. Each of those crimes is racketeering activity, and together they form an ongoing

pattern.

## COUNT III

## Violation of 18 U.S.C. § 1962(c)

Against Harvest Health, Inc., Randy Taylor Consulting, Partner Credit Union, Steve

White, Jason Vedadi, Nicole Stanton, Ben Kimbro, Elroy Sailor, Ana Dutra, Mark

Barnard, Eula Adams, Daniel Reiner, Canaccord Genuity and Alliance Global

Partners

193. Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

194. RICO creates a private right of action for "[a]ny person injured in his business or

property by reason of a violation of [18 U.S.C. § 1962]." 18 U.S.C. § 1964(c). Under

18 U.S.C.

195. Pursuant to § 1962(c), it is "unlawful for any person employed by or associated

with any enterprise engaged in, or the activities of which affect, interstate or

foreign commerce, to conduct or participate, directly or indirectly, in the

conduct of such enterprise's affairs through a pattern of racketeering activity or

collection of unlawful debt."

196. An "enterprise" for purposes of RICO "includes any . . .partnership, corporation, association, or other legal entity." 18 U.S.C. § 1961(4). Harvest Health Inc is a corporation[5]. Thus, it is a RICO "enterprise."

197. Steve White, Jason Vedadi, Nicole Stanton, Ben Kimbro, Elroy Sailor, Ana Dutra, Mark Barnard, Daniel Rand Eula Adams are all owners and members of Harvest Health and comprise the members of the board of directors during the operative time referenced in this complaint. They therefore have roles in directing its affairs.

198. Harvest Health, Inc., Randy Taylor Consulting, Partner Credit Union, Steve White, Jason Vedadi, Nicole Stanton, Ben Kimbro, Elroy Sailor, Ana Dutra, Mark Barnard, Eula Adams, Daniel Reiner, Canaccord Genuity and Alliance Global Partners have each conducted or participated in the conduct of the affairs Harvest Health, Inc. through a pattern of racketeering activity.

199. Together, they oversaw the operations related to the growing, processing, and sale of medical marijuana at the Natural Wellness Enterprises, LLC cultivation facility in Arkansas in violation of 21 U.S.C. § 841(a), 21 U.S.C. § 843(a)(6), and 21 U.S.C. § 856.

200.    They entered into an agreement to manage and run the facility, under which marijuana is to be cultivated at 4001 Comet Rd. in violation of 21 U.S.C. § 856. They conspired with each other, Verano, LLC and its associated Defendants, Natural State Wellness Enterprises, LLC, and its related defendants, and The

---

[5] Randy Taylor Consulting appears to be the underlying LLC which operates Harvest Health Inc., there are likely reasons for the multiple names, and at this point Plaintiff is unaware whose name rests as controller of the Randy Taylor Consulting licenses, but for the operative purposes of this complaint, Harvest Health/Harvest House of Cannabis/Randy Taylor consulting are all the same.

Ross Group, to violate numerous provisions of the CSA by growing medical

marijuana and thus violated 21 U.S.C. § 846.

201. Harvest Health advertises marijuana for sale over the Internet in violation of 21

U.S.C. § 843(c)(2)(A).  They and their owners, financiers, and operators have

violated 21 U.S.C. § 843(b) by using the telephone, email, or other

communication facilities to take steps in furtherance of the many violations of the

CSA that occur at their numerous dispensaries and cultivation facilities, and at

the 4001 Comet Road medical marijuana grow facility.

202. Each of those crimes is racketeering activity under 18 U.S.C. § 1961(1)(D), and

together they represent an ongoing pattern of criminal and racketeering activity.

203. Funding, goods, and services procured by Harvest Health, Inc., Randy Taylor

Consulting, Partner Credit Union, Steve White, Jason Vedadi, Nicole Stanton, Ben

Kimbro, Elroy Sailor, Ana Dutra, Mark Barnard, Eula Adams, Daniel Reiner,

Canaccord Genuity and Alliance Global Partners for Harvest's unlawful activities

have moved in interstate commerce, and Harvest sold marijuana grown by Verano

and Harvest at the Natural State Wellness Enterprises facility, which was

trafficked by Frontier, funded by SGI, Rockview, Bluestine, JJR, and Serruya, and

this marijuana was trafficked in the interstate market for illegal drugs.

204. The racketeering activities Harvest Health, Inc., Randy Taylor Consulting,

Partner Credit Union, Steve White, Jason Vedadi, Nicole Stanton, Ben Kimbro,

Elroy Sailor, Ana Dutra, Mark Barnard, Eula Adams, Daniel Reiner, Canaccord

Genuity and Alliance Global Partners directly and proximately injured the Plaintiff

by engaging in racketeering activity which damaged the Plaintiff.

205. Harvest Health, Inc., Randy Taylor Consulting, Partner Credit Union, Steve White, Jason Vedadi, Nicole Stanton, Ben Kimbro, Elroy Sailor, Ana Dutra, Mark Barnard, Eula Adams, Daniel Reiner, Canaccord Genuity and Alliance Global Partners each understood that their collective efforts to establish and operate the medical marijuana operations at 4001 Comet Rd. could only be accomplished through a pattern of racketeering activity.

206. Specifically, all understood and agreed that Natural State Wellness Enterprises would grow hire Harvest Health to manage the operation, cultivate marijuana, and that all parties would violate the CSA by cultivating medical marijuana and selling it, 21 U.S.C. § 841(a), possessing the equipment and materials necessary for marijuana cultivation, id. § 843(a)(6), and maintain the premises at 4001 Comet Rd. for cultivating and selling medical marijuana, id. §§ 849, 856.

207. Canaccord and Alliance Global were aware that they were financing an active marijuana grow, and that they would receive profits back related to the interstate trafficking of marijuana. Canaccord and Alliance Global used the telephone and internet in furtherance of the marijuana trafficking in violation of 21 USC § 843(b), and sent money via the internet in violation of 18 USC § 1952.

208. Partner credit union received income directly from Harvest, an interstate marijuana drug trafficking operation, and invested in that income into businesses which are engaged in interstate commerce, in violation of 21 U.S. Code § 854.

209. Partner credit union received income directly from Harvest, an interstate marijuana drug trafficking operation, and invested in that income into securities, in violation of 21 U.S. Code § 854.

210. Steve White, Jason Vedadi, Nicole Stanton, Ben Kimbro, Elroy Sailor, Ana Dutra, Mark Barnard, Eula Adams, Daniel Reiner all had operational and organizational control of an interstate marijuana trafficking operation in violation of 21 USC § 841(a)(1) and 21 USC § 848, as the organization has more than 5 members. All would receive the financial benefits of their participation and organization of a marijuana trafficking operation, and discussed the operation via the telephone and internet in violation of 21 USC § 843(b).

211. Each of those crimes is racketeering activity, and together they form an ongoing pattern.

## COUNT IV

## Violation of 18 U.S.C. § 1962(d)

Against Harvest Health, Inc., Randy Taylor Consulting, Partner Credit Union, Steve White, Jason Vedadi, Nicole Stanton, Ben Kimbro, Elroy Sailor, Ana Dutra, Mark Barnard, Eula Adams, Daniel Reiner, Canaccord Genuity and Alliance Global Partners

212. Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

213. RICO creates a private right of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." 18 U.S.C. § 1964(c). Under 18 U.S.C.§ 1962(d), it is "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." Harvest Health, Inc., Randy Taylor Consulting, Partner Credit Union, Steve White, Jason Vedadi, Nicole Stanton, Ben Kimbro, Elroy Sailor, Ana Dutra, Mark Barnard, Eula Adams, Daniel Reiner, Canaccord Genuity and Alliance Global

Partners agreed and conspired to violate 18 U.S.C. § 1962(c).

214.  An "enterprise" for purposes of RICO "includes any ... partnership,
corporation, association, or other legal entity." 18 U.S.C. § 1961(4). Harvest
Health, Inc. is an Arizona Corporation. It is a RICO "enterprise."

215. Funding, goods, and services procured by Defendants in furtherance of
Harvest Health's unlawful activities have moved in interstate commerce, and
Harvest Health sells marijuana in the interstate market for illegal drugs.

216.  Harvest Health, Inc., Randy Taylor Consulting, Partner Credit Union, Steve
White, Jason Vedadi, Nicole Stanton, Ben Kimbro, Elroy Sailor, Ana Dutra,
Mark Barnard, Eula Adams, Daniel Reiner, Canaccord Genuity and Alliance
Global Partners are each associated with Harvest Health Inc., and agreed and
conspired to help Harvest Health, Inc. operate a medical marijuana grow
facility at 4001 Comet Rd, Newport, Arkansas in violation of 21 USC § 846.

217. Harvest Health, Inc., Randy Taylor Consulting, Partner Credit Union, Steve
White, Jason Vedadi, Nicole Stanton, Ben Kimbro, Elroy Sailor, Ana Dutra,
Mark Barnard, Eula Adams, Daniel Reiner, Canaccord Genuity and Alliance
Global Partners each understood that their collective efforts to jointly fund,
establish, and operate the medical marijuana operations at 4001 Comet Rd. in
Arkansas could only be accomplished through a pattern of racketeering
activity.  Specifically, all understood and agreed to conspire in a RICO
operation that they were aware would involve Harvest Health, Inc. and
Natural State Wellness violating the CSA by cultivating medical marijuana and
selling it, 21 U.S.C. § 841(a), possessing the equipment and materials necessary

for marijuana cultivation, *id.* § 843(a)(6), and maintaining the premises at 4001 Comet Rd. in Newport for cultivating and selling medical marijuana, id. §§ 849, 856.

218. Partner laundered the drug proceeds over the entirety of the operation for Harvest and its shell companies, repeatedly violating 18 U.S. Code § 1956.

219. Canaccord and Alliance Global funding provided necessary financing to Harvest Health, discussing the financing, agreeing that it was in promotion of Harvests interstate drug trafficking operation, via telephone and email in violation of 21 USC § 843(b) and 18 USC § 1952.

220. Steve White, Jason Vedadi, Nicole Stanton, Ben Kimbro, Elroy Sailor, Ana Dutra, Mark Barnard, Eula Adams, and Daniel Reiner made up the board of directors for months in which Harvest was cultivating and selling marijuana in violation of 21 USC § 841(a)(1), and collectively had operational and organizational control of an interstate drug trafficking organization which distributed marijuana across the United States, employing more than 1,000 drug traffickers, in violation of 21 USC § 848.

221. Each of those crimes is racketeering activity, and together they form an ongoing pattern.

222. Racketeering activities undertaken in furtherance of the conspiracy to violate 18 U.S.C. § 1962(c) among Harvest Health, Inc., Randy Taylor Consulting, Partner Credit Union, Steve White, Jason Vedadi, Nicole Stanton, Ben Kimbro, Elroy Sailor, Ana Dutra, Mark Barnard, Eula Adams, Daniel Reiner, Canaccord Genuity and Alliance Global Partners have injured the Plaintiff.  Specifically, the

Harvest associated wing of the RICO operation were the proximate cause of the eventual damages to the Plaintiff: His arrest and pending felony criminal charges for cultivating marijuana which belonged to Verano and was cultivated at the behest of Harvest Health for its eventual sale by Natural State Wellness, funded by Canaccord and Alliance Global, benefitting all defendants in the RICO complaint.

## COUNT V

### Violation of 18 U.S.C. § 1962(c)

Against Harvest Health, Inc., Randy Taylor Consulting, Partner Credit Union, Steve White, Jason Vedadi, Nicole Stanton, Ben Kimbro, Elroy Sailor, Ana Dutra, Mark Barnard, and Eula Adams, Daniel Reiner, Canaccord Genuity and Alliance Global Partners

223. Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

224. RICO creates a private right of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." 18 U.S.C. § 1964(c). Under 18 U.S.C.§ 1962(d), it is "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." Harvest Health, Inc., Randy Taylor Consulting, Partner Credit Union, Steve White, Jason Vedadi, Nicole Stanton, Ben Kimbro, Elroy Sailor, Ana Dutra, Mark Barnard, Eula Adams, Daniel Reiner, Canaccord Genuity and Alliance Global Partners agreed and conspired to violate 18 U.S.C. § 1962(c).

46

225. An "enterprise" for purposes of RICO "includes any … partnership, corporation, association, or other legal entity." 18 U.S.C. § 1961(4). Harvest Health, Inc. is an Arizona Corporation. It is a RICO "enterprise."

226. Funding, goods, and services procured by Defendants in furtherance of Harvest Health's unlawful activities have moved in interstate commerce, and Harvest Health sells marijuana in the interstate market for illegal drugs.

227. Harvest Health, Inc., Randy Taylor Consulting, Partner Credit Union, Steve White, Jason Vedadi, Nicole Stanton, Ben Kimbro, Elroy Sailor, Ana Dutra, Mark Barnard, Eula Adams, Daniel Reiner, Canaccord Genuity and Alliance Global Partners associated with Harvest Health Inc., and agreed to help Harvest Health, Inc. fund and operate a medical marijuana grow facility at 4001 Comet Rd, Newport, Arkansas.

228. Harvest Health, Inc., Randy Taylor Consulting, Partner Credit Union, Steve White, Jason Vedadi, Nicole Stanton, Ben Kimbro, Elroy Sailor, Ana Dutra, Mark Barnard, Eula Adams, Daniel Reiner, Canaccord Genuity and Alliance Global Partners each understood that their collective efforts to fund, establish, and operate the medical marijuana operations at 4001 Comet Rd. in Arkansas could only be accomplished through a pattern of racketeering activity.

229. Specifically, all understood and agreed that Harvest Health, Inc. and Natural State Wellness would violate the CSA by cultivating medical

47

marijuana and selling it, 21 U.S.C. § 841(a), possessing the equipment
and materials necessary for marijuana cultivation, *id.* § 843(a)(6), and
maintaining the premises at 4001 Comet Rd. in Newport for cultivating
and selling medical marijuana, id. §§ 849, 856.

230. Partner laundered the drug proceeds for Harvest and its shell companies in
violation of 18 U.S. Code § 1956.

231. Canaccord and Alliance Global each realize but that for their debt funding,
Harvest would be unable to accomplish its goals of interstate marijuana
trafficking. Both Canaccord and Alliance global funded Harvest's marijuana
trafficking operation in violation of 18 USC § 1952 and discussed the
funding prior to its occurrence in violation of 21 USC § 843(b).

232. Each of those crimes is racketeering activity, and together they form an
ongoing pattern.

233. Racketeering activities undertaken in furtherance of the conspiracy to
violate 18 U.S.C. § 1962(c) Harvest Health, Inc., Randy Taylor
Consulting, Partner Credit Union, Steve White, Jason Vedadi, Nicole
Stanton, Ben Kimbro, Elroy Sailor, Ana Dutra, Mark Barnard, Eula
Adams, Daniel Reiner, Canaccord Genuity and Alliance Global Partners
have injured the Plaintiff.  Specifically, the operation of the facility was
the proximate cause of the eventual damages to the Plaintiff: His arrest
for cultivating marijuana which belonged to Verano and was cultivated
at the behest of Canaccord and Alliance Global funded Harvest Health
for its eventual sale by Natural State Wellness, benefitting all defendants

in the entire complaint.

## COUNT VI

### Violation of 18 U.S.C. § 1962(c)

Against Natural State Wellness Enterprises, LLC, John Allison, Henry Wilkins V,

Dr. William Young, Bill Carwell, Christine L. Edmonson, Amy Haun Hall, Bob

Dale Haun, Leo Hauser, Ryan W Heringer, David Johnson, Robert Lee Jones III,

Bobbi McDaniel, Dustin McDaniel, Bobby McDaniel, Kristy McDaniel, Marvin

Parks, Jeffery J. Ryan, Dr. Marvin Bruce Sanderson, Dr. Ladd Scriber, Dr.

Thomas M Stank, Bill Stanley, Bart Calhoun, Melissa Moody, Martha Rouby,

Warren Ross, and The Ross Group

234. Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

235. RICO creates a private right of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." 18 U.S.C. § 1964(c). Under 18 U.S.C. § 1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."

236.     Natural State Wellness Enterprises, LLC, John Allison, Henry Wilkins V, Dr. William Young, Bill Carwell, Christine L. Edmonson, Amy Haun Hall, Bob Dale Haun, Leo Hauser, Ryan W Heringer, David Johnson, Robert Lee Jones III, Bobbi McDaniel, Dustin McDaniel, Bobby McDaniel, Kristy McDaniel, Marvin Parks, Jeffery J. Ryan, Dr. Marvin Bruce Sanderson, Dr. Ladd Scriber, Dr. Thomas M Stank, Bill Stanley, Bart Calhoun, Melissa Moody, Martha Rouby,

Warren Ross, and The Ross Group each violated this provision of 18 U.S.C. § 1962.

237. All of the RICO Defendants formed an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4) by establishing contractual and other relationships with each other, collaborating to develop the 4001 Comet Rd property for medical marijuana cultivation, and agreeing design and construct a building for the purposes of medical marijuana cultivation, and the subsequent sale of medical marijuana, which did in fact occur. This enterprise enables the RICO Defendants to more efficiently achieve their collective purpose.

238. John Allison, Henry Wilkins V, Dr. William Young, Bill Carwell, Christine L. Edmonson, Amy Haun Hall, Bob Dale Haun, Leo Hauser, Ryan W Heringer, David Johnson, Robert Lee Jones III, Bobbi McDaniel, Dustin McDaniel, Bobby McDaniel, Kristy McDaniel, Marvin Parks, Jeffery J. Ryan, Dr. Marvin Bruce Sanderson, Dr. Ladd Scriber, Dr. Thomas M Stank, Bill Stanley, Bart Calhoun, Melissa Moody, Martha Rouby, and Warren Ross collectively cultivated and sold marijuana in violation of 21 USC 841(b)(1)(A).

239. John Allison, Henry Wilkins V, Dr. William Young, Bill Carwell, Christine L. Edmonson, Amy Haun Hall, Bob Dale Haun, Leo Hauser, Ryan W Heringer, David Johnson, Robert Lee Jones III, Bobbi McDaniel, Dustin McDaniel, Bobby McDaniel, Kristy McDaniel, Marvin Parks, Jeffery J. Ryan, Dr. Marvin Bruce Sanderson, Dr. Ladd Scriber, Dr. Thomas M Stank, Bill Stanley, Bart Calhoun, Melissa Moody, Martha Rouby, and Warren Ross collectively constructed a warehouse in which to cultivate marijuana in violation of 21 USC § 856.

240. John Allison, Henry Wilkins V, Dr. William Young, Bill Carwell, Christine L.
Edmonson, Amy Haun Hall, Bob Dale Haun, Leo Hauser, Ryan W Heringer,
David Johnson, Robert Lee Jones III, Bobbi McDaniel, Dustin McDaniel, Bobby
McDaniel, Kristy McDaniel, Marvin Parks, Jeffery J. Ryan, Dr. Marvin Bruce
Sanderson, Dr. Ladd Scriber, Dr. Thomas M Stank, Bill Stanley, Bart Calhoun,
Melissa Moody, Martha Rouby, and Warren Ross collectively discussed and were
involved in the ownership of a company engaged in the cultivation of marijuana
which they were cultivating in violation of 21 USC § 843(b) and 21 USC §
841(a)(1).

## COUNT VII

## Violation of 18 U.S.C. § 1962(d)

Against Natural State Wellness Enterprises, LLC, John Allison, Henry Wilkins V,
Dr. William Young, Bill Carwell, Christine L. Edmonson, Amy Haun Hall, Bob
Dale Haun, Leo Hauser, Ryan W Heringer, David Johnson, Robert Lee Jones III,
Bobbi McDaniel, Dustin McDaniel, Bobby McDaniel, Kristy McDaniel, Marvin
Parks, Jeffery J. Ryan, Dr. Marvin Bruce Sanderson, Dr. Ladd Scriber, Dr.
Thomas M Stank, Bill Stanley, Bart Calhoun, Melissa Moody, Martha Rouby,
Warren Ross, and The Ross Group

241.  Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

242. RICO creates a private right of action for "[a]ny person injured in his business or
property by reason of a violation of [18 U.S.C. § 1962]." 18 U.S.C. § 1964(d). Under
18 U.S.C. § 1962(d), "It shall be unlawful for any person to conspire to violate any
of the provisions of subsection (a), (b), or (c) of this section."

243. John Allison, Henry Wilkins V, Dr. William Young, Bill Carwell, Christine L. Edmonson, Amy Haun Hall, Bob Dale Haun, Leo Hauser, Ryan W Heringer, David Johnson, Robert Lee Jones III, Bobbi McDaniel, Dustin McDaniel, Bobby McDaniel, Kristy McDaniel, Marvin Parks, Jeffery J. Ryan, Dr. Marvin Bruce Sanderson, Dr. Ladd Scriber, Dr. Thomas M Stank, Bill Stanley, Bart Calhoun, Melissa Moody, Martha Rouby, The Ross Group and Warren Ross collectively applied as owners of Natural State Wellness Enterprises, conspired to cultivate marijuana in violation of 21 USC § 846.

244. John Allison, Henry Wilkins V, Dr. William Young, Bill Carwell, Christine L. Edmonson, Amy Haun Hall, Bob Dale Haun, Leo Hauser, Ryan W Heringer, David Johnson, Robert Lee Jones III, Bobbi McDaniel, Dustin McDaniel, Bobby McDaniel, Kristy McDaniel, Marvin Parks, Jeffery J. Ryan, Dr. Marvin Bruce Sanderson, Dr. Ladd Scriber, Dr. Thomas M Stank, Bill Stanley, Bart Calhoun, Melissa Moody, Martha Rouby, The Ross Group and Warren Ross collectively applied as owners of Natural State Wellness Enterprises, conspired to create a premises cultivate marijuana in violation of 21 USC § 856.

245. John Allison, Henry Wilkins V, Dr. William Young, Bill Carwell, Christine L. Edmonson, Amy Haun Hall, Bob Dale Haun, Leo Hauser, Ryan W Heringer, David Johnson, Robert Lee Jones III, Bobbi McDaniel, Dustin McDaniel, Bobby McDaniel, Kristy McDaniel, Marvin Parks, Jeffery J. Ryan, Dr. Marvin Bruce Sanderson, Dr. Ladd Scriber, Dr. Thomas M Stank, Bill Stanley, Bart Calhoun, Melissa Moody, Martha Rouby, The Ross Group, and Warren Ross collectively applied as owners of Natural State Wellness Enterprises, communicated about

their conspiracy to cultivate marijuana via e-mail and telephone in violation of 21 USC § 843(b).

246. John Allison, Henry Wilkins V, Dr. William Young, Bill Carwell, Christine L. Edmonson, Amy Haun Hall, Bob Dale Haun, Leo Hauser, Ryan W Heringer, David Johnson, Robert Lee Jones III, Bobbi McDaniel, Dustin McDaniel, Bobby McDaniel, Kristy McDaniel, Marvin Parks, Jeffery J. Ryan, Dr. Marvin Bruce Sanderson, Dr. Ladd Scriber, Dr. Thomas M Stank, Bill Stanley, Bart Calhoun, Melissa Moody, Martha Rouby, The Ross Group, and Warren Ross each understood that their collective efforts to establish and operate the medical marijuana operations at 4001 Comet Rd. could only be accomplished through a pattern of racketeering activity.  Specifically, all understood and agreed that Natural State Wellness Enterprises would hire Harvest Health to manage the operation, cultivate marijuana, and that all parties would violate the CSA by cultivating medical marijuana and selling it, 21 U.S.C. § 841(a), possessing the equipment and materials necessary for marijuana cultivation,  *id.* § 843(a)(6), and maintain the premises at 4001 Comet Rd. for cultivating and selling medical marijuana, *id.* §§ 849, 856.  The Ross group was actively involved in the daily operations of the facility, ensuring that it was operating at maximum efficiency to violate 21 USC § 841(a)(1), which is in and of itself, a violation of 21 USC § 856.

247. Each of those crimes is racketeering activity, and  together they form an ongoing pattern.

## **<u>PRAYER FOR RELIEF</u>**

A.  Awarding the Plaintiff three times the damages to his person that was caused by
the defendants RICO activities.

B.  Exemplary damages against each individual defendant, matching the jury's actual
damage award under C.R.S. § 13-21-102

C.  Trebled Exemplary damages against each individual defendant pursuant to
C.R.S. § 13-21-102(3)(a)

D.  Trebled Exemplary damages against each individual defendant pursuant to
C.R.S. § 13-21-102(3)(b)

E.  Awarding the Plaintiff attorneys fees pursuant to statute.

F.  Any other relief that this honorable court finds just.

DATED: March 16, 2021

/S Matthew W Buck
RED LAW
Attorney for the Plaintiff
RED LAW
144 W 11th Avenue
Denver CO 80204
matt@red.law
720-507-1884
