UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No.: 21-cv-00692-DDD-SKC

NICHOLAS NIELSEN,

       *Plaintiff*,

  v.

VERANO HOLDINGS, LLC, et al.,

       *Defendants*.

**DEFENDANTS SOL GLOBAL INVESTMENT AND SERRUYA PRIVATE EQUITY'S
REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO STAY
IN FAVOR OF ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS
<u>PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)</u>**

QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
Alex Spiro
Rex Lee
Ty Adams
51 Madison Avenue
New York, New York 10010
212-849-7000

*Attorneys for Defendants SOL Global
Investments and Serruya Private Equity*

Defendants SOL Global Investments ("SGI") and Serruya Private Equity ("Serruya") respectfully submit this reply memorandum of law in support of their motion to (i) stay this case pursuant to Section 3 of the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, or (ii) in the alternative, dismiss plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

SGI and Serruya's opening papers showed that the Court should stay this case in favor of arbitration because, even though they are not parties to an arbitration agreement with plaintiff, his claims against them are intertwined with his pending arbitration with defendant Randy Taylor Consulting ("RTC"). SGI and Serruya also showed that, if not stayed, this case should be dismissed because plaintiff fails to state a claim under RICO. Plaintiff's arguments to the contrary—which are long in rhetoric (he cavalierly likens the sale of medicinal marijuana to human trafficking) yet short on addressing the required elements of his claims—are unconvincing.

Starting with arbitrability, plaintiff does not dispute that claims against a third party to an arbitration agreement may be subject to arbitration if, as here, the claims allege interdependent and concerted misconduct involving a party to that agreement. Plaintiff's principal argument instead is that this case falls outside his agreement with RTC because his former employment is "immaterial" to his claims. That is not true: his entire case teeters on the allegation that the activities he was arrested for—growing marijuana in his home—were part of his job with RTC. Indeed, according to his opposition, his alleged damage includes the income he would have earned if he were still working there. Because his claims against SGI and Serruya are intertwined with his former employment and arbitration agreement with RTC, those claims should proceed in arbitration, if not dismissed. *See* Part I.

In addition to bringing this case in the wrong forum, plaintiff fails to allege an actionable RICO claim. His response to the defense of *in pari delicto* boils down to the assertion that he was

1

"duped" into the allegedly illegal enterprise and therefore bears less responsibility. But the only "duping" he belatedly points to (as there is no such allegation in his complaint) is that he did not learn where the marijuana clones came from (out of state) until they first arrived at his apartment. Even so, he admits that, afterward, despite having learned this alleged fact, he still grew the clones in his home. Thus, far from showing that he was an unwitting participant, his argument instead highlights his knowing complicity in the alleged wrongdoing. Under the doctrine of *in pari delicto*, plaintiff cannot assert claims against his joint wrongdoers. *See* Part II.A.

Plaintiff fares no better in alleging standing or the requisite elements of his claims. Much of the alleged injury, his opposition contends, is that, but for the misconduct, he would still have "the same job" at RTC, cultivating marijuana. But cultivating marijuana, according to him, is a violation of RICO. His alleged injury is thus that he is no longer able to participate in and profit from the alleged RICO enterprise. Under no scenario could that so-called injury possibly be recoverable; it would be as nonsensical as if a mobster sued under RICO because he could no longer be a mobster. *See* Part II.B.

Elsewhere, plaintiff resorts to attacking straw men. For example, in support of his conspiracy claim, he points to the unremarkable proposition that a defendant can be held liable for the acts of a co-conspirator. True, but plaintiff must first allege SGI's and Serruya's participation in the alleged conspiracy, and he does not. In another example, he argues that, to allege standing, he did not have to be the intended victim of the illegal acts, so long as they caused his harm. Also true, but what he fails to allege is proximate cause. Indeed, unable to address the threshold deficiencies in his claims, plaintiff ignores most of them. And with respect to the few that he attempts to tackle head-on, his arguments are wrong. *See* Part II.B-C.

Accordingly, the Court should stay this action in favor of arbitration or, in the alternative, dismiss plaintiff's claims with prejudice.

## ARGUMENT

### I. THE COURT SHOULD STAY THIS CASE IN FAVOR OF ARBITRATION

Plaintiff does not contest that he is party to an arbitration agreement with RTC. He also does not dispute that he alleges that all defendants, including RTC, were part of one unified operation—a well-established basis to require arbitration of all his claims, even against those defendants who are not parties to the agreement. *See* ECF No. 87 ("Br.") § I. Plaintiff instead contends that his employment and arbitration agreement with RTC are "immaterial to [his] causes of action." ECF No. 107 ("Opp.") at 5. He goes on to argue in passing that the arbitration agreement is *void ab inicio*. *See id*. Neither argument has merit.

Regarding his first argument—that his claims do not relate to his employment with RTC—plaintiff argues that it was defendants' allegedly illegal activity, not events tied to his employment, that led to his arrest and forms the basis of his claims. *See id*. That is incorrect; according to his allegations, his job was indistinguishable from the unlawful activity. That unlawful activity was defendants' planned distribution of licensed medicinal marijuana. *See e.g.*, Amended Complaint, ECF No. 12 ("Compl.") ¶ 151. Plaintiff's job allegedly was to facilitate that plan by growing the marijuana at his home, instead of at the licensed dispensary. *Id*. ¶ 110-13. He was then arrested for that home grow. *Id*. ¶ 115. Further tethering his claims to his former employment is the fact that the damages he seeks includes the income he would have earned *at RTC*. Opp. at 10. This case thus falls squarely within his contractual obligation to arbitrate any claim "arising out of [his] employment." ECF No. 3 (RTC Br.) at 6 (quoting arbitration agreement).

Plaintiff's second argument—that the arbitration agreement is *void ab inicio*—is equally baseless. As an initial matter, his argument is entirely conclusory, with no purported explanation

3

for why the agreement is illegal. Moreover, as RTC convincingly demonstrated in moving to compel arbitration, plaintiff expressly consented to the arbitrator's "exclusive authority" over questions about the agreement's validity and enforceability. ECF No. 56 (RTC Reply Br.) at 5 (quoting arbitration agreement). Thus, it is for the arbitrator, not the Court, to decide plaintiff's claim that his agreement is void.

Even if plaintiff were correct that his claims against SGI and Serruya are not arbitrable, he offers no reason why his claims against them and the other non-RTC defendants need to proceed in parallel with his arbitration against RTC. As SGI and Serruya's opening papers showed, it is well within the Court's discretion to permit that arbitration to proceed first, even without the non-RTC defendants, and stay the rest of this case in the interest of judicial efficiency and longstanding policies favoring arbitration. *See* Br. at 7-8. With no contrary argument from plaintiff, that should be the minimum relief the Court orders, to the extent it grants RTC's motion to compel arbitration.

## II.   ALTERNATIVELY, THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS

### A.   *In Pari Delicto* Bars Plaintiff's Claims

Relying principally on *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299 (1985), plaintiff contends that the defense of *in pari delicto* is inapplicable because he was purportedly "duped" and therefore less responsible than the so-called money men who stood to profit from the illegal enterprise. Opp. at 14-15. This argument fails for multiple reasons.

First, apart from being entirely absent from his amended pleadings, plaintiff's claim that he was "duped" is a red herring. His newfound allegation is that RTC did not tell him from the start that the marijuana clones were coming from outside Arkansas (which, plaintiff contends, constituted illegal trafficking). Even if that were remotely true, plaintiff concedes that RTC told him about this fact—the allegedly illegal trafficking—*before* he started his home grow. *See id.* ("[plaintiff] certainly was not told the source of the Arkansas Marijuana *until* it was being

4

unpacked … in his kitchen (emphasis added)). What plaintiff's claim of being "duped" thus amounts to is an admission that he had full knowledge of the alleged wrong yet participated in it anyway. This admission only serves to underscore his culpability and justify application of the *in pari delicto* doctrine.

Second, the facts in this case are entirely distinguishable from *Bateman Eichler*. There, the plaintiffs were investors who traded using nonpublic information they received from defendants, believing that the information was true when in fact defendants had supplied false information to manipulate the market. *See Bateman Eichler*, 472 U.S. at 301–03. Even though the investors traded on what they believed was inside information, the Supreme Court ruled that they were not as culpable as the defendants who supplied the false information. That was so, according to the Court, because any wrongdoing by the investors was "after the fact" and "solely derivative" of the defendants' wrongdoing. *Id.* at 313. In other words, despite the investors' own misconduct, they were still victims of the defendants' fraud. *See id.* at 314 ("And in cases where the tipper intentionally conveys false or materially incomplete information to the [investor], the tipper commits an additional violation: fraud against the [investor]."). Here, by contrast, plaintiff was not allegedly defrauded. Nor does he allege that he committed a wrong that was derivative of the wrong that defendants allegedly committed. Rather, he alleges that all parties, himself included, acted in concert to commit the same misconduct—the distribution of marijuana. That makes him a joint wrongdoer.

Finally, plaintiff is not, as he argues, less culpable than defendants merely because he was the one on the ground executing the unlawful acts whereas defendants were the ones allegedly calling the shots. Plaintiff, for example, cites no authority for the proposition that relative culpability turns on the wrongdoer's stature in the enterprise. Nor would such a proposition make

5

sense: under plaintiff's incorrect reasoning, a hit man would never be *in pari delicto* with the one ordering the hit. All that matters is that plaintiff was "an active, voluntary participant in the unlawful activity" and that "the degrees of fault [are] essentially indistinguishable." *Republic of Iraq v. ABB AG*, 768 F.3d 145, 162 (2d Cir. 2014). Here, plaintiff alleges that his home grow was indispensable to the alleged enterprise. *See e.g.*, Compl. ¶ 113. That makes "the conclusion … inescapable that [plaintiff] bears at least substantially equal responsibility." *Republic of Iraq*, 768 F.3d at 163. The doctrine of *in pari delicto* thus bars his claims.

### B. Plaintiff Lacks Standing Under RICO

SGI and Serruya showed that plaintiff fails to allege standing because he does not allege either a cognizable injury or proximate cause. *See* Br. § II.B. Plaintiff's arguments to the contrary are unpersuasive.

With respect to injury, plaintiff errs in contending that his job loss or the legal fees he incurred in defending his criminal case are sufficient to convey standing. Those are, at best for him, indirect injuries. The *direct* harm he allegedly suffered was his arrest, which is indisputably an injury that is personal, not the type of injury to "business or property" that is necessary to state a claim under RICO. 18 U.S.C. § 1964(c). *Derivative* harms, like his firing, may have followed from his arrest, and are indirectly related to the alleged wrongdoing, but such indirect injuries are insufficient to obtain RICO standing. Otherwise, every personal injury that comes with some financial loss—like the costs to clear one's reputation—would provide the basis of a RICO claim, which is contrary to well-settled law. *See* Br. § II.B (citing cases); *see also Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 565 (6th Cir. 2013) ("Courts interpreting RICO … exclude[e] damages 'arising directly out of' a personal injury, even though personal injuries often lead to monetary damages that would be sufficient to establish standing if the plaintiff alleged a non-personal injury.").

6

Plaintiff's cited authorities do not hold otherwise. In those cases, unlike here, the loss of a job or legal costs were the plaintiffs' direct injuries. In *Handeen v. Lemaire*, for example, the unlawful acts were legal actions that the defendant took against the plaintiff in a bankruptcy proceeding; the legal fees the plaintiff incurred to fend off those actions were thus recoverable under RICO. 112 F.3d 1339, 1343–44 (8th Cir. 1997) ("The Complaint paints a sordid portrait of an intricate scheme through which Lemaire sought to fraudulently obtain a discharge of Handeen's judgment by manipulating the bankruptcy system."). In *Outlaw Laboratory*, "the attorney fees were … incurred in the process of litigating a potential lawsuit that was part and parcel of the Enterprise's scheme." *In re Outlaw Lab'y, LP Litig.*, 2020 WL 1953584, at *9 (S.D. Cal. Apr. 23, 2020), *reconsideration denied*, 2020 WL 3469387 (S.D. Cal. June 25, 2020). In *Shearin v. E.F. Hutton Group, Inc.*, the plaintiff's firing was itself an act "in furtherance of [the] conspiracy." 885 F.2d 1162, 1170 (3d Cir. 1989). And so on, with the rest of plaintiff's cases being to the same effect.[1]

Plaintiff's alleged injury is unsustainable for an additional reason. He claims that his injury is that he should still be working at RTC, growing marijuana. *See* Opp. at 10 ("Plaintiff is not asserting that he cannot vaguely seek employment, he is asserting that but for the conduct of the Defendants, he would have *the same job he possessed* and the experience and income that would come from being the cultivation manager of a large, regional, marijuana cultivation facility."

---

[1] In *Stochastic Decisions, Inc. v. DiDomenico*, the fees were incurred because of the "defendants' illegal actions in impeding [plaintiff's] collection of … [outstanding] judgments." 995 F.2d 1158, 1166 (2d Cir. 1993). And in *Burger v. Kuimelis*, unlike here, the plaintiff's claimed injuries were "a foreseeable outcome of the misconduct and were solely the result of counterdefendants' actions." 325 F. Supp. 2d 1026, 1036 (N.D. Cal. 2004). The last remaining cases plaintiff cites have no relevance to the present issue. *See Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1087 (9th Cir. 2002) (finding that "[p]urchasers of trading cards do not suffer an injury cognizable under RICO when they do not receive an insert card"); *Hudak v. Jet Research Center*, No. 4-1150, at *22 (D.N.M. Mar. 10, 2006) (plaintiffs' asserted injury was the loss of warheads that were fraudulently sold to them).

(emphasis in original)). Thus, his alleged injury is that he is being denied the opportunity to continue in the very enterprise that he contends is illegal. That is hardly an injury, let alone a RICO injury, and it defies common sense to assert, as plaintiff does, that the basis for a RICO claim can be one's exclusion from the alleged RICO enterprise.

Plaintiff's arguments in relation to proximate cause are similarly meritless. He first argues that he does not have to allege that defendants intended to victimize him. *See id.* at 6. So what: whether plaintiff was an intended victim is not the issue; the issue is whether he alleges a direct causal connection between the alleged misconduct and his injury. As to that required element, plaintiff falls well short. As he alleges, the predicate act involved so-called violations of *federal* drug laws. Plaintiff, however, was not arrested by federal authorities. Instead, he was arrested by *state* law enforcement for violating *state* drug laws. *See* Compl. ¶ 155. Thus, the alleged predicate act (violating federal law) was not the cause of his alleged injury (being charged with state crimes) under any circumstance.

Tellingly, Plaintiff does not even attempt to address this glaring hole in his claim, and instead argues that he only needs to allege that "but for the Defendants' conduct he would not have been injured." Opp. at 6. That is not correct. Rather, as SGI and Serruya's opening papers showed, "but for" causation is not, by itself, sufficient; RICO requires "proximate causation" too. *See* Br. § II.B.2. Because plaintiff does not allege that, he does not have standing, and his claims should be dismissed.

### C.     Plaintiff Fails To Allege Requisite Elements Of His RICO Claims

#### 1.     Plaintiff Fails To Allege A Claim Under Section 1962(c)

Plaintiffs admits that he does not allege that either SGI or Serruya operated or managed the alleged enterprise. *See* Opp. at 10 ("Plaintiff is not asserting that the Defendants participated in the operation or management of the RICO Enterprise …."). That admission dooms his claim

8

because section 1962(c)—which makes it unlawful "to conduct or participate, directly or indirectly, in the conduct of [an] enterprise's affairs through a pattern of racketeering activity"— imposes liability only on those who participate in the "operation" or "management" of the RICO enterprise. 18 U.S.C. § 1962(c); *see* Br. § II.C.1 (citing cases).

Plaintiff contends otherwise, citing *Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Loc. Union 639*, 883 F.2d 132 (D.C. Cir. 1989), *on reh'g in part*, 913 F.2d 948 (D.C. Cir. 1990). While *Yellow Bus* dispensed with the "operation or management" test, that decision is obsolete. Three years later, the Supreme Court adopted the "operation or management" test, holding that "one is not liable under [section 1962(c)] unless one has participated in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993). Because plaintiff admits that he does not satisfy that test, his section 1962(c) claim should be dismissed.

### 2.   Plaintiff Fails To Allege A Claim Under Section 1962(d)

Plaintiff argues in support of his section 1962(d) conspiracy claim that co-conspirators are responsible for the acts of each other. *See* Opp. at 12. That is true, but it misses the point. Before plaintiff can seek to impose liability on the co-conspirators for the acts of the conspiracy, he must first allege with particularity the existence of a conspiracy. That requires alleging more than just "[m]ere association with conspirators"; rather plaintiff must allege with particularity an "agreement" to commit unlawful acts. *Brooks v. Bank of Boulder*, 891 F. Supp. 1469, 1479 (D. Colo. 1995).

As to SGI and Serruya, however, the entirety of plaintiff's allegations is that they were investors in Verano, another alleged member of the conspiracy. *See* Compl. ¶ 77. Plaintiff does not allege that either SGI or Serruya were directly involved with, or even knew about, the

9

development of the Arkansas dispensary. He does not allege any facts showing that their investments went specifically to fund the sale of medicinal marijuana in Arkansas. Nor does he allege that they were involved in any way in the alleged decision to have plaintiff grow marijuana in his home. While plaintiff's opposition attempts to draw comparisons between medicinal marijuana and sex trafficking, the reality is cannabis companies, unlike sex traffickers, represent legitimate investments that, in some cases, are publicly traded on foreign exchanges. Under plaintiff's theory, had Verano gone public before his arrest, he could have asserted his section 1962(d) claim against an ever changing list of market investors, as well as underwriters, and perhaps even the exchange where Verano traded, all for facilitating investments in a cannabis company. RICO is not so boundless and instead requires specific allegations of an illicit agreement. Coming nowhere near that threshold, plaintiff's section 1962(d) claim should be dismissed.

### D. Dismissal Should Be With Prejudice

As shown earlier, the deficiencies in plaintiff's claims are fatal. Plaintiff, for example, did not have a cognizable injury when he brought this suit, and because the only event directly resulting from the alleged misconduct was his arrest, he will not have a cognizable injury in the future. Consequently, any dismissal of his claims should be with prejudice.

Plaintiff's last-minute request to tack on a section 1962(b) claim should also be rejected. *See* Opp. at 11. That section makes it "unlawful for any person through a pattern of racketeering activity … to acquire or maintain, directly or indirectly, any interest in or control of any enterprise" that affects interstate commerce. 18 U.S.C. § 1962(b). Having not alleged that either SGI or Serruya engaged in any racketeering,[2] plaintiff certainly does not allege that any racketeering was

---

[2] This provides an independent basis to dismiss his section 1962(c) claim. *See* Br. § II.C.2.

the means by which they invested in Verano. Nor does he allege that their investments alone were the proximate cause of any injury. *See Abraham v. Singh*, 480 F.3d 351, 357 (5th Cir. 2007) (recognizing that to satisfy Section 1962(b), plaintiffs must show that their injuries were "proximately caused by a RICO person gaining an interest in, or control of, the enterprise through a pattern of racketeering activity"). In short, plaintiff's proposed section 1962(b) claim is just as deficient as his other claims.

## CONCLUSION

The Court should stay this case or in the alternative dismiss plaintiff's claims against SGI and Serruya with prejudice.

Dated: June 4, 2021                                              Respectfully submitted,

By: */s/ Ty Adams*
Ty Adams
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010-1601
(212) 849-7000

*Attorneys for Defendants SOL Global Investments and Serruya Private Equity*

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

11

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of June, 2021, a true and correct copy of the foregoing **DEFENDANTS SOL GLOBAL INVESTMENT AND SERRUYA PRIVATE EQUITY'S REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO STAY IN FAVOR OF ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)** was electronically filed with the Clerk of the United States Court of the District of Colorado using its CM/ECF system, which will send a notice of electronic filing to all counsel of record registered with CM/ECF.

/s/ Ty Adams